[No. 6324.]

## HILL ET AL. v. DEN ET AL.

TRUST — WILL — POWER OF SALE — JURISDICTION — TRUSTEE, DEED BY — PUR-
CHASER IN GOOD FAITH — NOTICE — PARTITION — ESTOPPEL — STATUTE OF
LIMITATIONS — PATENT — DECREE OF DISTRIBUTION.—N. D., in considera-
tion of natural love and affection and of one dollar, executed to himself
and his brother, R. D., jointly, a deed of conveyance of an undivided
half of the Rancho Dos Pueblos, in trust for his children, and — after
subsequently conveying a portion of the rancho, by metes and bounds,
to one D. H. — died, leaving a will; wherein (after constituting three
executors, and enjoining upon them to pay his debts) he devised to
them, in trust for his children, the Rancho Dos Pueblos, or so much thereof
as had not, before the date of the will, been conveyed by the deed of trust
above mentioned—the share of each to be conveyed to him upon his
reaching the age of twenty-one years. Bequests were also made to T. A.
and J. A. All the executors qualified; but one of them afterward resigned.
Afterward, and more than five years before the beginning of the suit, the
other executors sold and conveyed portions of the land to H. and others,
for the purpose of paying debts and charges of the trust, and also conveyed
portions of the land, in professed pursuance of the trust, to certain of the
adult heirs, some of whom accepted and others declined to accept the deeds;
the title of two of those accepting afterward vesting, by mesne conveyances,
in H. and others of the purchasers aforesaid. Afterward, the acting ex-
ecutors and R. D. executed a deed of partition of the Rancho between the
two trusts, by which all of the land conveyed as aforesaid by the former
fell into their allotment, and R. D. agreed to make such conveyances to the
purchasers as might be necessary to perfect their titles. Afterward, a final
decree of distribution was made by the Probate Court, by which the Rancho
Dos Pueblos was distributed to the acting executors, as trustees under the
will, and in which no mention was made of the legacies to T. A. and J. A.
No mention was made of the trust deed in the decree; and indeed, except
in the partition deed above mentioned, the trust deed was ignored by the
executors throughout all their proceedings. In an action brought by the
trustees, in the District Court, to close the trust, against the heirs, R. D., the
purchasers, and others, in which cross-complaints were filed by the several
sets of defendants—the purchasers, among other defenses, pleading the
Statute of Limitations and an estoppel *in pais—held :*

First. The deed of trust by N. D. to himself and R. D. was a valid oper-
ative instrument as a declaration of trust, and, in an equitable proceeding,
must control the legal title.

It is not the legal conveyance or transfer of property, but the declar-
ation of trust, that operates in the creation of trustees; and a trust will not
be permitted to fail for want of a trustee, even if none is named. In this
case also, the deed is referred to and recognized in the will, and the parties
claiming under the will are estopped from denying its validity.

Second. The direction of the testator to the executors, to pay debts, did
not give them a power of sale for that purpose.

The deeds to H. and others were, therefore, wholly unauthorized and
void.

Even if these deeds could operate to convey the legal title, the grantees, holding under the will, were bound to know its contents, and were, therefore, not purchasers in good faith, and took subject to the trusts.

Third. The deeds to the children cannot be maintained, because the land was held in common and undivided with R. D.; and the executors, therefore, could not convey the undivided half held by the latter; and, because the allotments were therefore too great.

Fourth. The partition between the trustees under the will and R. D. was void, because D. H. (the owner of an undivided half of the tract conveyed to him by N. D. in his life-time), was not a party; and, because R. D., under the deed of trust, had no power to make partition.

Fifth. There was no estoppel *in pais* against the heirs generally, or against those who had accepted the portions conveyed to them by the executors, and sold them to others; the purchasers in both cases having knowledge of the true state of the title, or the means of acquiring it with reasonable diligence.

Sixth. The decree of distribution in the Probate Court was final and conclusive as to the legacies to J. A. and T. A.; and is as to them a complete bar.

Seventh. The Statute of Limitations has no application, the patent having issued since the beginning of the suit.

APPEAL from the First District Court, County of Santa Barbara. SEPULVEDA, J.

The judgment was in favor of the plaintiffs and certain of the defendants. The appeal is by the defendants Richard S. Den and the widow and heirs of Nicholas A. Den, deceased.

The Rancho Dos Pueblos was held under a grant from the Mexican Government, approved by the Departmental Assembly; and the judicial possession had been delivered. The other facts are stated in the opinion.

*O. P. Evans*, *T. B. Bishop*, and *W. M. Francis*, for Appellants.

I.

The deed of trust of Sept. 10th, 1851, was a valid instrument, and created a joint trust in Richard S. Den and Nicholas A. Den as to the undivided half of the Rancho Dos Pueblos.

1. The granting words in the deed constitute a good covenant to stand seized to uses according to rules stated in the leading case *Roe* v. *Tranmer*, Willes, 632.

2. If the deed was not effectual as a conveyance to Nicho-

las A. Den, it was operative to vest the whole estate in Richard, even according to the most stringent rules of common-law conveyancing. (Sheppard's Touchstone, p. 82–71; Saunders on Uses, 134; Perkins, 203; *Cameron* v. *Stevens*, 4 Allen (N. B.) 141; Williams on Real Property, 181; *Smith* v. *Risley*, Cro. Car. 529, cited in *Jackson* v. *Sebring*, 16 Johns. 515; Plowden, 5, 156; 1 Coke Inst. 14.)

3. It is also, in this equitable proceeding, a perfect declaration of trust, and amply sufficient to evidence an equitable estate in *cestuis que trust*. (Perry on Trusts, §§ 8, 273; Hill on Trustees, §§ 64, 65, 441; *Shephard* v. *Shephard*, 7 Johns. Ch. 56; *Huntley* v. *Huntley*, 8 Ind. Eq. 250; *Fisher* v. *Fields*, 10 John. 495; *Garner* v. *Garner*, Busb. Eq. 250; *Jones* v. *Obenchain*, 10 Gratt. 259.)

4. The testator in his will recognized and confirmed it; and all persons claiming under the will are estopped from disputing its validity. (*Adams* v. *Lansing*, 17 Cal. 638.)

5. It is argued that the intent of the grantor to make a provision for his children is to fail, because, as it is claimed, his minor intent to create a joint trust in himself and his brother cannot be effectuated. Under such a construction, every trust by deed or will to two or more jointly would fail, if one or more refused to accept. But it has been repeatedly held that in such case the whole estate shall vest in those accepting. (Perry on Trusts, sec. 273; Hill on Trustees, 441.)

6. The Court found that the deed was never delivered; but its execution was alleged in the complaint, and admitted by the answers. (*Burnett* v. *Stearns*, 33 Cal. 468; *Gregory* v. *Nelson*, 41 Id. 284.)

## II.

The will gave the trustees no power to sell the lands devised in trust.

2. In this State, where all the property of a testator is charged by law with the payment of his debts, there is no such thing as an implied power in executors to sell. (*Drury* v. *Natick*, 10 Allen, 174; *Welles* v. *Child*, 12 Id. 333; *Cornish* v. *Wilson*,

6 Gill, (Md.) 315 ; *Matter of the Will of Fox*, 52 N. Y. 530 ; *Dunne* v. *Keeley*, 2 Dev. 284 ; *Harris* v. *Douglas*, 44 Ill. 471 ; *Manning Heirs*, 14 Ala. 611 ; *Hines* v. *Spruell*, 2 Dev. and Vat. 93 ; *Clark* v. *Riddell*, 1 Seargt. & R. 311 ; *Henderson* v. *Baker*, July Term, 1874 ; *Neal* v. *Patton*, 40 Ga. 363 ; *Scott* v. *Jones*, 4 Clark & Fin. 397 ; *Freake* v. *Crawford*, 3 Mylne & C. 502.) Such a power is disputed even in England. (*Doe* v. *Hughes*, 6 Ex. 222 ; Williams on R. P. 211.) By the Constitution of this State the probate jurisdiction is distributed to the County Court, (Const. art. 6, sec. 8) and the children of the testator, the *cestuis que trust* under the will, were entitled, if the lands devised in trust were to be alienated, to have it done in the forum provided by law, and it could be done in no other way. (*Pryor* v. *Downey*, 50 Cal. 409.) A Court of Equity has no jurisdiction to determine what were and what were not valid debts, legacies, etc., nor whether, at the time of the various sales to Hollister and others, the facts existed upon which the Probate Court would have been justified in ordering a sale.

## III.

The deeds of Hill and Huse made on sales, under which Hollister, Cooper, and Sturgis claim, are void.

The devise was to the three executors, and they all accepted. Thereby the estate vested in the three in the same manner as if the devise had been to them by name. The two offices of executor and trustee were separate and distinct, and the resignation by Robinson of his office as executor was not a resignation of his office as trustee. (*Estate of Delaney*, 49 Cal. 85 ; *Parsons* v. *Lyman*, 5 Blatch. 170 ; 1 Perry on Trusts, § 281 ; Lewin on Trusts, 168–9 ; *Judson* v. *Gibbons*, 5 Wend. 225 ; *Doe* v. *McFarland*, 9 Cr. 152 ; *Perkins* v. *Lewis*, 41 Ala. 649 ; *Baldwin* v. *Porter*, 12 Conn. 473 ; *Bresh* v. *Young*, 4 Dutch. 237 ; *Ross* v. *Barclay*, 18 Penn. St. 179 ; *Shelton* v. *Homer*, 5 Met. 466 ; *Matter of Wadsworth*, 2 Barb. Ch. 384 ; *Quackenboss* v. *Southworth*, 41 N. Y. 117.)

The counsel for Hollister and others misconceive the meaning of the words *virtute officii*, and these words have no application

to the devise in this case. (*Tainter* v. *Clark*, 13 Met. 225–7; *Conklin* v. *Edgerton*, 21 Wend. 430.)

The trust having vested in the trustees jointly, all must unite to make a conveyance, and these deeds by two of them only are void. (*Larned* v. *Welton*, 40 Cal. 349; *Butler* v. *Welton*, July Term, 1872; *Wilbur* v. *Almy*, 11 How. U. S. 180; *Sinclair* v. *Jackson*, 8 Cowen, 543; *Brenham* v. *Wilson*, 71 N. Y. 507; *Van Rensselaer* v. *Aiken*, 22 Wend. 549; *Ridgely* v. *Johnson*, 11 Barb. 527; *McRae* v. *Farow*, 4 Hen. and Munf. 444; Story's Eq. Jur. § 1280; *Thatcher* v. *Candee*, 3 Keyes, 160; 1 Perry on Trusts, 495, § 411; Tiff. and B. on Trusts, 539; Hill on Trustees, 305; *Willis* v. *Farley*, 24 Cal. 500.)  ·

Even if the deeds were inoperative to convey the legal title, since they were in derogation of the trust, the grantees held the estate conveyed upon the same trusts, and with no greater rights than their grantors had. (Perry on Trusts, sec. 860.) The purchasers were bound to examine the will, and to know its contents. (*Wilson* v. *Castro*, 31 Cal. 435; *Bush* v. *Ware*, 15 Peters, 111.)

### IV.

The agreement for partition, made March 10th, 1870, between Richard S. Den and Hill and Huse, is absolutely void: 1st, because Richard S. Den had no power under the trust deed to make a partition; and 2nd, because Daniel A. Hill, who was the owner of an undivided interest under the deed from Nicholas A. Den, was not a party to the partition. (*Sutter* v. *San Francisco*. 36 Cal. 116; *Gates* v. *Salmon*, 46 Id. 374.)

### V.

The conveyances to the children were void. No partition, as called for by the will, could be made among the children, until the lands held under the trust had been segregated.

### VI.  ·

There is no foundation for the claim made here of an estoppel *in pais*. (*Martin* v. *Zellerbach*, 38 Cal. 315; *Biddle Boggs* v.

*Merced Mining Co.*, 14 Id. 279; *Smith* v. *Penny*, 44 Id. 165; *Davis* v. *Davis*, 26 Id. 38, 44; *Carpentier* v. *Thurston*, 24 Id. 281; *Marquart* v. *Bradford*, 43 Id. 529.)

## VII.

The decree of distribution is final and conclusive as to legacies. (Code Civ. Proc., sec. 1666.)

## VIII.

The Statute of Limitations has no application. (*Gibson* v. *Choteau*, 13 Wall. 92; *Henshaw* v. *Bissell*, 18 Id. 255; *Gardner* v. *Miller*, 47 Cal. 574; *Galindo* v. *Wittenmeyer*, 49 Id. 12; *Reed* v. *Ibarra*, 50 Id. 465; *Miranda* v. *Toomey*, 51 Id. 165.)

*Charles E. Huse*, for Respondents.

The executors and trustees had power to sell without any order of court, as the estate was devised to them. (*Estate of Delany*, 49 Cal. 85; *Perkins* v. *Gridley*, 50 Id. 80; *Deering* v. *Adams*, 37 Me. 264; *Knight* v. *Loomis*, 30 Id. 204; *Jackson* v. *Shuber*, 7 Cowen, 194.)

The resignation of Robinson, one of the executors, did not disqualify the other two executors from acting. (Probate Act, §§ 96, 100; 4th K. C. 327.)

The decree of the Probate Court settling the accounts of the executors and distributing the estate to the trustees, not having been appealed from, was conclusive as to the rights of the heirs, legatees, and devisees. (Probate Act, §§ 1665, 1666; *Estate of Garraud*, 36 Cal. 277; *Estate of Arnaz*, 51 Id. 435; *Haverstick* v. *Trudel*, 51 Id. 431; *Pond* v. *Pond*, 10 Id. 495.)

*Wilson & Wilson, Charles Fernald*, and *S. M. Wilson*, for Respondents Hollister and others.

1. The deed of trust by Nicholas A. Den to himself and brother was void.

If an authority is given to two persons to do a given thing, and one is incapable of taking, the other does not take. This is a necessary corollary from the rule that the sole act of one of two joint agents is void. (Co. Lit. 112 b, 181 b; 1 Com. Dig. 144.)

It has been held that where a power is *devised*, coupled with an interest to two joint agents, and one dies, the survivor may act; but here there is no interest, and the power is created *by deed*. (1 Sugd. on Powers, 121, marg. note, and cases therein.) Here the grant is to the grantees *jointly* in terms; and that such was the grantor's intent is not denied. When such is the case, the deed will not operate, if one of the grantees is incapable. This is involved in *Peter et al.* v. *Beverly*, (10 Pet. 562), where it said that when a power coupled with an interest is given to executors, and there are no words in the will warranting the conclusion that the testator intended a joint execution of the power, it will survive. *E converso*, when not coupled with an interest, it will not survive.

Here, though there were words sufficient to make a covenant, there is no covenantee—no one in whose favor the intent of the grantor could prevail—no two persons, both of whom were capable of participating in the trust. A covenant to one's self, to stand seized as a trustee, would be absurd. Here there were two nominal trustees—Richard S. Den and the grantor himself. Both were intended to take in the same manner and degree. To make the deed take effect in favor of R. S. Den would do violence to the plain intent of the grantor. That intent was to create a trusteeship to be executed by two persons jointly. The intention must be respected. (Sheppard's Touchstone, § 2, Preston's note.) Counsel cite Sheppard's Touchstone (71, 82) and Perkins (203), to the point that if one of the several grantees is incapable of taking, and the others not, those who are capable take, and the grant fails as to the one incapable. But in all the instances put in these citations, the grants were made to invest the grantees with the beneficial ownership, and not with any agency or trust in which the grantor desired to participate.

A distinction is to be made between a deed appointing other trustees and a deed granting to one's self the right to participate in the exercise of the powers and discretion granted. In the one case the grantor parts with everything. In the other, he grants the right of control, as well as the title, to himself, which cannot be. It is not every case where a trust granted to several, some of whom disclaim, will vest _ab initio_ in those who accept. Whether a trust under such circumstances will vest, depends on the question whether the trust was given to the persons or to the office. If it appears that the powers imply a personal confidence in the donees, they must be exercised by them, and cannot be exercised by any one else, but will be absolutely gone if one disclaims. (Perry on Trusts, § 273, note 8, and cases cited.) There can be no doubt the powers given by this deed were confided to the persons named. They were of a most delicate character, and the circumstance that the grantor reserves a voice to himself, shows a jealous watchfulness incompatible with a willingness to confide them entirely to a stranger.

There is no proof that R. S. Den accepted the trust; and, although acceptance will be presumed, yet not conclusively; and the presumption of acceptance here is rebutted by the fact that he never acted under the deed, nor ever interfered with the property until eight years after the grantor's death, when he could not accept. (_Lancashire_ v. _Lancashire_, 2 Phillips, 664.)

Besides, if the deed was valid, the deed in partition obviated the objection.

2. As to the powers of the executors' trustees to sell without an order of Court.

The cases in our own court are conclusive upon this point. They hold that where the estate is devised to the executor, he takes no mere power, but the whole estate—a power coupled with an interest—and may sell without an order. (_Estate of Delaney_, 49 Cal. 85, affirmed in _Perkins_ v. _Gridley_, 50 Id. 80.)

· The Court there hold that where a power of sale is given to an executor, and the estate is devised to him also, his sales need

no confirmation, and they also recognize that an executor is authorized to sell to pay charges on the estate by implication as well as by statute. The statute does not oust the general law. (*Norris* v. *Harris*, 15 Cal. 256; *Payne* v. *Payne*, 18 Id. 292.)

3. The executor's deeds to Hollister and the other purchasers are valid, notwithstanding Robinson did not join in them.

The statute authorized an executor to resign, (Prob. Act, § 100) and the other executors, where there were more than one, to act without him (Id. § 96). Robinson resigned as executor, and—being devisee *virtute officii* as executor—as trustee under the devise as well. Renunciation of the office of executor is a renunciation of the trust conferred upon him in addition to that office. (*Beekman* v. *Bonsor*, 23 N. Y. 304.)

*Kidwell* v. *Brummagim*, (32 Cal. 339, 340) is conclusive that the effect of such words as are used in the will is to confer a trust on the executor which he takes *ex officio*. The statute gives authority to resign the office of executor only, but necessarily every power and interest invested in the executor as such follows the office. *Res accessoria sequitur rem principalem.* If the executors had not qualified, the trusts devised would never have taken effect, and therefore it was the officers, (executors) not the persons, who took; and consequently resignation of the office is divestiture of title. The cases cited by the counsel that acceptance of the executorship in a case like this is an acceptance of the devise, affirm our argument that it is the official, not the man, to whom the devise in trust is made. When the Legislature authorized the official to lay down his office, we cannot avoid the conclusion he lays down its appurtenances as well.

4. The cause of action set up by the widow and children to set aside the deeds to the purchasers, is barred by the Statute of Limitations.

The patent inured to the purchasers, who held the title under the deeds from Huse and Hill. ( *Wilson* v. *Castro*, 31 Cal. 40.) It makes no difference whether those trustees violated their duty as such in making them or not, (Hill on Trustees, 175) or that some of *cestuis que trustent* are minors ( *Cunningham* v. *Ashley*, 45 Cal. 485.)

*Jarrett T. Richards*, for Respondents Allemany and Mora.

It was the intention of the will to charge the lands with the legacies. They are therefore not affected by the decree of the Probate Court, but the land remains subject to the charge until the legacies are paid.

By the COURT:

In October, 1845, Juan B. Alvarado, Governor of California, granted to Nicholas A. Den the Rancho Dos Pueblos, in Santa Barbara County. This grant was, in due course, presented to the Land Commission for confirmation, and was by the Commission confirmed. It was also confirmed by the United States District Court, on appeal, by a decree which declared it to be a grant of three and one-half leagues within certain exterior boundaries. The survey of the land was approved by the Surveyor-General on the 11th day of January, 1872, and by the Commissioner of the General Land Office on the 23rd day of February, 1877, on which last day the patent issued.

On the 16th day of September, 1851, Nicholas A. Den, while seized in fee of said rancho, by a deed—in which his wife Rosa (who, however, had no interest in the premises) joined—in consideration of love and affection and one dollar, gave, granted, conveyed, set over, and confirmed unto Richard S. Den and Nicholas A. Den, jointly as trustees, the undivided one-half of the Rancho Dos Pueblos, with certain personal property, in trust, to hold and manage the property, and convey, as the children of Nicholas and his said wife Rosa came of age, to each of said children (of whom there were then four living, and who were named in the deed) an equal undivided part of said rancho, with a provision that after-born children should be let in and be entitled to receive each an equal share. The execution of this deed is alleged in the complaint, to which it is attached as an exhibit, and expressly admitted by all the pleadings.

On the 20th of September, 1851, four days later, Nicholas A. Den and Rosa, his wife, executed to Daniel Hill a deed of

conveyance by metes and bounds of a segregated 2,700 acres off the east end of the rancho. After this deed, the title to this 2,700 acres was held one-half under the trust deed of Septemtember 16th, 1851, and the other half by Daniel Hill.

Nicholas A. Den died March 3rd, 1862. He left surviving him a widow and ten children, and by his will he gave to his widow one-fourth of all his personal property, including horned cattle, horses, and sheep, and gave and devised to her, during the term of her natural life, the right to graze, maintain, and keep the cattle and live stock bequeathed to her upon the said Rancho Dos Pueblos. He also, by a subsequent clause of his will, devised to his executors, in trust for his children, " All my farm or rancho in the said County of Santa Barbara, known as the Dos Pueblos, or so much thereof as has not before the date of this will been conveyed by a certain deed of trust, executed by me and Rosa A. Den, my wife, to Richard S. Den and myself, as trustees, in trust for certain of my children, the other particulars of which are not now by me remembered," with a proviso that his wife Rosa should have, during her natural life, the sole and exclusive use, possession, and enjoyment of the dwelling-house on the rancho, and of the garden, grounds, and out-houses pertaining thereto. He also devised to his executors, on the same trusts, a large amount of other real property, and also gave to them, in trust, three-fourths of all his personal property, consisting principally of cattle, horses, and sheep. The executors were José Maria Hill, Huse, and Robinson. They all took out letters. The devise was to them and their heirs, and the survivor and survivors of them, their or his heirs.

" First. In trust for any child or children of mine, and for the lawful issue of any child or children, and for any child or children by me begotten, who may be born of my wife after my death, my intention being that my said lands    *    *    * shall vest in the said child, children, or issue surviving at my death—subject, however, to the trusts and limitations as well before as hereafter in this article expressed.

" Second. And upon the further trusts that from time to time, according as any child of mine shall attain the age of

twenty-one years,  *   *   *   then the said executors, the survivor and survivors of them, shall divide and partition off by metes and bounds, and convey by proper instruments, in severalty to every such child, such portion hereinbefore in this article described as in their judgment will be the just and equal share of said child, having in view a fair and equal partition and division of said lands."  *   *   *

The testator, in his will, instructed his executors as soon as possible after his death to take measures to have any lands belonging to his estate—held in common with any other person or persons, and undivided—partitioned, divided, and set off to them in severalty.  He gave them power to lease the real property devised to them in trust, collect the rents, " and to apply the same, or so much thereof as may be necessary, to the support, education, and maintenance " of any child or children who had not received a conveyance.

He gave to his executors the management of the live stock left to them in trust, expressly provided that no debt or liability should be created or incurred against the estate, or the share of any child, with power to sell and dispose of such portions of the personal property as in the judgment of the executors should at any time be required for the purposes of the will, and with power to employ and expend such portions of the. personal property, or the proceeds of any sales thereof, as might be necessary for the support, maintenance, and education of the children.   The will further provided for the investment of any surplus moneys which might come into the hands of the trustees, and that the personal property should be also divided among the children as they came of age, with power to convert the personal property into money ; and it further provided that, in the division of the trust property among the children, personal property, live stock, and money might be given to any one child instead of land, and vice versa.

There is no power in the will to sell the real estate or convert it into money ; the trust, as to that, being to hold and convey as before stated.   By the will the testator gave several legacies, which have not been paid.

The executors, under the order of the Probate Court, prior to 1869, sold all the real estate devised in trust, except the Dos Pueblos Rancho. These sales were made upon petitions and orders, and the sales were by the Probate Court confirmed. On the 20th day of February, 1869, Robinson, one of the executors and trustees, resigned as executor, and the Probate Court accepted his resignation as such; and from that time Robinson never performed any act as trustee nor executor.

After his resignation, and while the estate was still unsettled in the Probate Court, Hill and Huse attempted to make sales, and did make deeds to Hollister, Winchester, Cooper, and Hayes, purporting to convey segregated portions of the rancho. Winchester conveyed to Hollister, and Hayes conveyed to Sturgis. They also made deeds purporting to partition off and divide among four of the children certain portions of the rancho by metes and bounds; and Huse alone, without the concurrence of either Robinson or Hill, made three deeds purporting to partition off and divide among three of the children, by metes and bounds, certain other portions of the rancho. He also made a five years' lease to the defendants, the Mores.

In making these attempted divisions among the children, Huse and Hill when acting together, and Huse when acting alone, ignored entirely the trust deed; treated the whole ranch, except the 2,700 acres described in the deed from Nicholas A. Den to Daniel Hill, as subject to the trusts expressed in the will, and made their apportionment among the children on that basis. The five eldest children have accepted their deeds. The next two refused to accept the deeds which Huse alone attempted to make to them, and the three youngest were still minors when this suit was commenced.

In 1870, R. S. Den, as trustee under the trust, and Huse and Hill as trustees under the will, made an agreement for the partition of the rancho between the two trusts. Neither Robinson nor Daniel Hill joined in this agreement, or in any manner concurred in it, and it appears never to have been observed by anybody. No other attempt was ever made to partition the ranch between the two trusts. Huse and Hill, after it was

made, as before, treated the whole rancho as in their hands under the devise of the will.

At the time of the sale by Huse and Hill to Hollister, all but two of the children were infants. At the time of their sales to Cooper and Winchester, all but three of the children were infants. Two of the children, Manuel and Nicholas, have made deeds purporting to convey by metes and bounds the lands which Huse and Hill attempted to set apart to them. Hollister, and Cutts, and Cooper, hold in part under these deeds, and in part under the deeds from Huse and Hill, on sales. The Probate Court entered its decree of distribution of the property on the 23rd of October, 1875. All the sales were made before distribution.

The action was commenced by a complaint filed by Huse and Hill, to which they made all the children, the legatees, and the purchasers parties, asking for the confirmation of their acts, the settlement of their accounts, and the sales of the residue of the trust property. The purchasers filed cross-complaints, asking that their title be quieted; and the children and widow of N. A. Den filed cross-complaints, asking that their several and respective rights in the premises be maintained and determined; that the deeds made by Huse and Hill be declared void; that all the trustees under the will be removed, and others appointed in their places, etc. The Court below declared all the deeds made by Huse and Hill, and by Huse alone, to be valid, and ordered the sale of all the property in the hands of the trustees.

1. The deed of trust made by Nicholas A. Den to himself and his brother was a valid and operative instrument, as a declaration of trust, and it must in this equitable proceeding be regarded as controlling the title to the undivided one-half of the Rancho Dos Pueblos. It is a perfect declaration of trust, and by it Nicholas A. Den and Richard S. Den were made joint trustees of the undivided one-half of the property, and the then living and thereafter to be born children of Nicholas A. Den and Rosa, his wife, were given a valid, equitable estate therein. "It is not the legal conveyance or transfer of the property, but the declaration of trust that operates in the crea-

tion of trustees." (Hill on Trustees, p. 64.) The objects and purposes of the trust and its every material incident are stated in the paper, and it is as full, complete, and definite as words can make it. There is a deed; the words are " give, grant, convey, set over, and confirm ; " the language is sufficient to define the trust; the grantor was actually seized at the time of the grant; the intent of the grantor is plain ; and there is a good consideration of blood to support the trust—the other grantee, Richard S. Den, being the brother of the grantor, and the benefiaries his children.

It is plain that the main intent, and the real purpose of Nicholas A. Den was by this deed to make a provision for his children. This trust, so clearly expressed and so plainly intended, would never be permitted to fail for want of a trustee, even if none had been named. It is to be observed, further, that Nicholas A. Den, in his will, referred to and recognized this deed, and the parties here who claim under the will are estopped from denying its validity. (*Adams* v. *Lansing*, 17 Cal. 638.)

The finding of the Court below that this deed was never delivered must be disregarded. It is directly contrary to the allegations and admissions contained in the pleadings. The execution of the deed is alleged in the complaint, (to which it is attached as an exhibit) and also in the cross-pleadings of some of the other parties. Its execution is not denied by any of the parties, and is expressly admitted by the very parties who rely upon the finding here.

It is therefore difficult to understand upon what theory the executors named in the will claimed the right to sell and convey, for the purposes of paying their testator's debts and expenses of administration, etc., property which their testator had, more than ten years before his death, by a solemn trust dedicated to the sole benefit of his children, which never came to the hands of the executors under the will, and over which they had, and in the very nature of things could have, no control whatever.

2. The will of Nicholas A. Den gave to his executors a power

to lease real estate and to sell personal property, but it gave them no power, either express or implied, to sell real estate. Their duty was to receive the real and personal property, to care for it and to receive the income, to convert personal property into money in their discretion, and to divide the real property and the remainder and increase of the personal property fairly and equally among the children as they came of age.

An inspection of the devise clearly shows that the testator did not contemplate that the sale of any part of his real estate would be necessary, and he made no provision for it. What he intended in regard to the real property devised was, that it should be held by the executors, and conveyed by metes and bounds to his children as they came of age. The direction of the testator to his executors to pay his debts, contained in the opening clause of his will, did not give to them a power of sale for that purpose, or vest them with any authority for their payment, other than the law itself creates, by expressly charging all the property, both real and personal, of every decedent with the payment of his debts, whether he die testate or intestate. (*Matter of the Will of Fox*, 52 N. Y. 530; *Dunne* v. *Keeley*, 2 Dev. 284; *Drury* v. *Natick*, 10 Allen, 174; *Willes* v. *Child*, 12 Id. 333; *Cornish* v. *Wilson*, 6 Gill, 315; *Harris* v. *Douglas*, 64 Ill. 466; *Manning's Heirs*, 13 Ala. 611; *Clark* v. *Riddle*, 11 Serg. & R. 311.)

In this State the Constitution has given the probate jurisdiction to the County Courts, sitting as Courts of Probate. In strict conformity to this distribution of judicial power, the Legislature has established in those courts a complete system for the sale of real estate to satisfy the claims of creditors, to pay all the expenses of administration, the allowance to the family, all legacies which are charged upon the testator's lands, and to provide for the support, education, and maintenance of the minor children. Why, pending administration of the estate, and while it was in their hands as executors and guardians, Huse and Hill should have attempted to sell the real estate devised without either the order or approval of the Probate Court, it is difficult to imagine. A Court of Equity had, at the time

these sales were made, no power to inquire into the existence of debts, or to order either of the sales to be made. If the executors claimed that such sales or any of them were necessary, the children had the right to have that asserted necessity inquired into and decided by the proper forum. (*Pryor* v. *Downey*, 50 Cal. 409.) They had a right to have the checks and safeguards which the probate law furnishes, applied to the sales; they had a right to all the steps which the statute has provided, the petition for the sale, the hearing thereon, the opportunity to dispute the claims of creditors, the finding of the Court that the sale was necessary, the notice of sale, the return thereon, the hearing on the return, an opportunity to contest the adequacy of the price, and to have others make additional bids while the proceedings for confirmation were pending—in short, the determination of all the matters involved, not by the District Court or by the executors, but by the forum which alone had jurisdiction to pass upon them. (*Pryor* v. *Downey*, 50 Cal. 398.) The sales made by Huse and Hill to Hollister, Winchester, Cooper, and Sturgis, were therefore no better than any other sales made by executors without the order of the Probate Court. They were wholly unauthorized and void. They had no power to sell at all, and no power to convey to any but the children of the testator. Even if their attempted conveyance of the trust property to a stranger, in breach of the trust, could operate a transfer of the legal title, the result here must be the same, for the persons receiving such conveyances must be held to take the property upon the same trusts as their grantors held it, and with no greater rights. It is impossible to maintain the claim that Hollister and the others were purchasers in good faith. They hold under the will, and are bound to know its contents and the powers of the executors. (*Wilson* v. *Castro*, 31 Cal. 435.)

3. The deeds made to the children by Huse and Hill jointly, and by Huse alone, cannot be maintained, because the executors acting in the matter proceeded on entirely wrong theories. They could not partition the property among the children in severalty while the estate they represented held the land in common and undivided, and they had no right or power to con-

vey the undivided half held under the trust deed which had never been subject to their control. Their allotments were greater in quantity than they had a right to make, and could not be confirmed as made, in justice to the minor children, and those who were not minors who had not accepted deeds. The only legal course in this matter is to make partition between the trustees under the deed on the one hand, and the estate on the other, so that each hold in severalty; and then and not till then will the executors be in a position to exercise the duty which the devise enjoins upon them, and which they or their successors alone can exercise, by dividing and partitioning among the children.

4. The agreement of partition between R. S. Den, and Huse and Hill is void. Daniel A. Hill did not join in the agreement. He was, as we have seen, the owner of an undivided one-half of the 2,700 acres in the eastern end, as tenant in common with the trustee under the deed, and was a necessary party to any partition. (*Sutter* v. *San Francisco*, 36 Cal. 116; *Gates* v. *Salmon*, 46 Id. 374.) This invalidated the attempted partition; and, besides, R. S. Den was not given by the trust deed any power to make partition.

5. There is no foundation here for the claim of an estoppel *in pais*. The rules which govern in such cases have been so often laid down here that they do not require repetition. The purchasers are certainly not in a position to claim that they were destitute of all knowledge of the true state of the title, or of all convenient and ready means of acquiring such knowledge by the use of ordinary diligence.

6. The decree of distribution is final and conclusive as to the legacies. They should have been obtained through the Probate Court before distribution, and the decree is, as to them, a complete bar. This is the express provision of the statute. (Code of Civil Procedure, § 1666.)

7. The Statute of Limitations has no application. (*Gardner* v. *Miller*, 47 Cal. 574; *Miranda* v. *Toomey*, 51 Id. 165.

8. The grazing right of Mrs. Welch, the widow of the testator, was passed upon and declared valid by this Court, after

full consideration, in *Welch v. Huse*, 49 Cal. 506. We do not consider the deed to Burke as an abandonment of her whole right, but only as a conveyance of it *pro tanto*.

9. The Court below erred in ordering a sale of the trust property. No sufficient cause appears for converting the entire *corpus* of the trust property into money, against the express directions of the testator, who, in creating the trust, provided that the trustees should hold the real property, and convey it to the children, in equal shares, as they became of age.

Judgment and order denying a new trial reversed, and cause remanded for further proceedings not inconsistent with the views expressed in this opinion. Remittitur forthwith.