[Civ. No. 11294. First Appellate District, Division One.—June 24, 1940.]

ALFONSO L. DEN et al., Appellants, v. S. M. SPALDING et al., Respondents.

Jerome H. Kann, H. E. Gleason, John F. Poole and Hill, Morgan & Bledsoe for Appellants.

Heaney, Price, Postel & Parma, Loeb, Walker & Loeb and Wm. W. Lovett, Jr., for Respondents.

KNIGHT, J.—Plaintiffs appeal from a judgment quieting title in defendants to land in Santa Barbara County.

The property consists of a strip of beach land fronting on the Pacific Ocean above the line of high tide. It contains about twenty-one acres and has become valuable by reason of production of oil on said lands and on lower tidelands since 1929. Defendants S. M. Spalding and Caroline C. Spalding, his wife, own the uplands, and defendant Pacific Western Oil Company holds a lease from them. The defendants also have oil rights in state tidelands adjoining the beach land under permit from the state. The strip affords access to the tidelands and is traversed by pipe lines from tideland wells.

The question herein is as to the boundary of the Spalding upland tract. The defendants contend that their record title extends to the high tide line, thereby including the land which is the subject of this action, and, further, that in any event they have title by adverse possession. We are of the view that their record title extends to the line of high tide.

Nicholas A. Den, through whom both plaintiffs and defendants claim, admittedly owned to the high tide line under patent from the United States government in confirmation of a Mexican land grant. The land as patented contained more than 15,000 acres, and was known as the Rancho Los Dos Pueblos. Plaintiffs are certain heirs of Den, two administrators with the will annexed of his estate, and the trustee of a trust created by him in his lifetime for the benefit of his

children.   (A decree reopening the estate of Nicholas A. Den by appointing two administrators with the will annexed was affirmed in *Estate of Den,* 3 Cal. (2d) 638 [45 Pac. (2d) 963].)   They contend that proceedings concluded in 1890, following the death of Den, which vested title to a portion of the Rancho in defendants' predecessors, did not include the strip of beach land here involved.   The solution of this question depends on whether the south line of the Spalding parcel as described in the instruments through which they claim is a meander line or a true boundary.

■   The court found that defendants Spalding were the owners of the beach land, subject to the lease to defendant Pacific Western Oil Company, without specifically finding whether they had record title or title based on adverse possession.   Such findings are sufficient. · (*Adams* v. *Crawford,* 116 Cal. 495 [48 Pac. 488] ; *Cooley* v. *Miller & Lux,* 156 Cal. 510, 523 [105 Pac. 981].)

The complaint contains a second count by which plaintiffs sought an accounting of oil produced in large quantity since 1929 on the beach land and on the tidelands in which the Spaldings have rights derived from state permits, on the theory that production on said lands drained oil from the strip of land plaintiffs claim for which defendants should pay them.   The trial of this issue was postponed pending decision on the question of title, with the result that trial has not been had on the second count.

During his lifetime Nicholas A. Den conveyed an undivided half interest in the Rancho to himself and Richard S. Den, in trust to convey equal undivided interests therein to the children of Nicholas upon their coming of age.   He died in 1862. By his will he bequeathed the other half interest to his three executors as trustees, upon a like trust.   During administration the executors, without authorization or confirmation of the probate court, made sales of portions of the Rancho, including a sale to Thomas R. Hayes and Daniel E. Hayes of the property which the Spaldings now own.   This parcel came to be known as the Tecolote Ranch.   It contains more than 900 acres.

A decree of final distribution was entered in the estate of Den in 1875, distributing the Rancho Los Dos Pueblos to the executors as trustees for the children of Den.   In 1876 the trustees brought an action for termination of the trust and

for other relief, in which they sought confirmation of the above sales. Purchasers were made parties, as were the children of Den, who were the beneficiaries of both trusts, and Richard S. Den, surviving trustee of the trust created by the decedent in his lifetime.

Judgment upholding the validity of the sales was reversed on appeal. (*Hill* v. *Den*, 54 Cal. 6.) The court held that the executors were without right to act in respect to the half interest which Nicholas A. Den had conveyed upon trust in his lifetime, and that they were without authority to sell the half interest constituting part of the estate of Den except in compliance with the procedure prescribed for probate sales. The proper course, the court indicated, was to make partition between the estate or testamentary trustees on the one hand, and the trustee of the trust created by Den in his lifetime, on the other. Only then would the testamentary trustees be in a position to make division among the children as they came of age.

Subsequent proceedings were had under the name of *Huse* v. *Den*, trustee Hill having refused to act further as a plaintiff. A decree dividing all property which was the subject of the action among the persons entitled thereto was affirmed in 1890. (*Huse* v. *Den*, 85 Cal. 390 [24 Pac. 790, 20 Am. St. Rep. 232].) It does not appear that a partition ever took place between the testamentary trustees on the one hand, and the trustee of the trust created by Den in his lifetime on the other. The decree in *Huse* v. *Den*, which is included in the record herein, divides the Rancho by providing for conveyances to named persons of segregated parcels. It does not merely deal with an undivided half interest in the property. It is to be inferred that this course was followed with the consent of all parties, amended pleadings having been filed according to the opinion in *Huse* v. *Den, supra.*

Pending the above litigation the children of Nicholas A. Den had transferred to Oliver P. Evans, Thomas B. Bishop and Catherine M. Bell their interest in the portions of the Rancho Los Dos Pueblos which were the subject of the unauthorized sales by the executors, including the parcel which defendants Spalding now own. Accordingly, upon invalidating the sales and making division of the Rancho in *Huse* v. *Den*, this property was awarded to these transferees. Other portions of the Rancho were allotted to the children of

Nicholas A. Den, or to persons who had succeeded to their interests.

Defendants Spalding claim title through Evans, Bishop and Bell under this decree to that portion of the land which had been the subject of the unauthorized sale to the Hayes. Plaintiffs likewise recognize this decree, but contend that it excluded the strip of beach land which is the subject of the present action.

The south line in the patent to Nicholas Den is admittedly a meander line. Such a line is described by courses and distances, being a straight line between fixed points or monuments, or a series of connecting straight lines. The line is thus fixed by reason of the difficulty of surveying a course following the sinuousities of the shore; and the impracticability of establishing a fixed boundary along the shifting sands of the ocean. (*De Watson* v. *San Pedro etc. R. R. Co.,* 169 Cal. 520 [147 Pac. 140]; *McLeod* v. *Reyes,* 4 Cal. App. (2d) 143 [40 Pac. (2d) 839]; *Hendricks* v. *Feather River Canal Co.,* 138 Cal. 423 [71 Pac. 496].) The result may be, as in the instant case, that an irregular strip of land will lie outside the meander line.

The rule is, as recognized by appellant, that such lines generally do not constitute a boundary, but the grant extends to the high tide line. It is on this theory that plaintiffs herein claim title through the patentee, Nicholas A. Den, to the strip of land, extending to the line of high tide, which is the subject of the present action. When the executors made the unauthorized conveyance to the Hayes they employed a description prepared from a survey of the parcel then made by one Barker. This description was adopted when the children of Den conveyed to Evans, Bishop and Bell their right to attack said transfer and also in the decree in *Huse* v. *Den,* invalidating the deed to the Hayes. The contention of plaintiffs is that the south line of the Barker survey is controlling, and that it is not a meander line, but a true boundary.

The description prepared from the Barker survey does not describe the parcel as bounded by the ocean, nor does it refer to the south line as a meander line. In respondents' analysis, appellants conceded in the trial that the south line of the Barker survey for this parcel followed the meander line of the government patent. The appellants do not deny this. Their contention is that the matter is of no importance, that

in any event the Barker line has been adopted as a true boundary, rather than a meander line. We are in accord with the statement that whether the Barker line and the line of the patent are identical is not of controlling importance, but in our view the Barker south line is a meander line.

In *Stillwell* v. *Jackson*, 5 Cal. (2d) 165 [53 Pac. (2d) 752], a large tract of land bounded by the ocean was conveyed by the town of Santa Barbara to several grantees as tenants in common. In a partition suit commenced in 1891 a decree was entered which made allotment of parcels without describing the lots as lying on the ocean or designating the boundary as a meander line. In an action brought many years later, after the property bordering the ocean had become valuable for beach cottage purposes, the plaintiffs contended that the court had failed to partition the land lying between the boundary as described and the high tide line. In affirming judgment for defendants based on the theory that the line was a meander line, the court emphasized the fact that it appeared from the pleadings and throughout the trial that the action related to the entire tract, and that if the decree was given the construction for which plaintiffs contended the court would have inadvertently omitted the property in question. *McLeod* v. *Reyes, supra,* is to the same effect.

The above decisions afford strong authority for a similar construction of the decree in *Huse* v. *Den.* That the litigation conducted first under the name of *Hill* v. *Den,* and later as *Huse* v. *Den,* related to all portions of the Rancho except a 2,700 acre tract as to which Den had executed a deed to one Hill, appears clearly from the pleadings, findings and decree in that proceeding. The deed to Hill covering 2,700 acres on the easterly side of the Rancho was executed by Den after he had created the trust for his children in an undivided half interest in the entire Rancho, with the result that the deed to Hill passed only an undivided half interest in the 2,700 acres. This fact is noted in the decision in *Hill* v. *Den, supra.* But it is stated in respondents' brief on the present appeal that after the conveyance to Hill none of the parties ever treated the 2,700 acre parcel as part of the Rancho, and that this condition was recognized in the trial of the present action. It is agreed herein that the decree in *Huse* v. *Den* makes no disposition of the 2,700 acre tract. But that it was intended to dispose of all other portions of the Rancho, not excluding

the strip of beach land which is the subject of the present action, is too plain to admit of doubt.

In the cross-complaint filed by the children of Nicholas A. Den to the complaint of the executors, they averred that wherever the word Rancho was used, it referred to all said Rancho except the 2,700 acres sold to Hill. The property is similarly described in the cross-complaints of Hollister and Sturges, claimants under the unauthorized deeds of the executors of Nicholas A. Den, in which cross-complaints the land is also described as bounded on the south by the line of the United States patent survey, admittedly a meander line, and by the ocean. In amendments to the complaint filed while the action was pending under the title *Hill* v. *Den,* the parcel conveyed to the Hayes, to which defendants have succeeded, is described as following the line of the official survey, which, as has been noted, was a meander line.

Several notices of action filed also described the proceedings as relating to the Rancho Los Dos Pueblos, with no exclusions. Upon the trial of *Huse* v. *Den,* exhibit C, a map showing the outline of the Rancho and delineating the boundaries of the several parcels as to which conveyances had been made by the executors, was treated by the parties as showing the land to which the action related. On said map all parcels run to the ocean.

Finding 46 in *Huse* v. *Den* expressly declares the intent of the court to make disposition of "all the lands which are the subject of this litigation". Number 25 of the conclusions of law provides that the legal title of the Rancho should be conveyed to the persons beneficially entitled thereto and that the trust should be extinguished. It would have been improper to extinguish the trust if the trustees continued to retain title to a portion of the Rancho. The decree likewise provides that "the trust estate shall be extinguished, terminated and ended".

That construction should be given the description of specific parcels in the decree which will effectuate, rather than defeat the declared purpose of the parties and the court. To construe the Barker south line as a meander line, rather than a true boundary, will accomplish this end.

We do not overlook the fact that the parcels awarded to defendants' predecessors by the decree in *Huse* v. *Den* were those which had been the subject of the unauthorized con-

veyances by the executors. Since the basis of the award of this property in *Huse* v. *Den* was the transfer by the children of Den to Evans, Bishop and Bell of their interest in the property which the executors were without right to convey, it may be conceded that the court did not intend to award to such transferees, nor the children to grant to them, rights in any property other than that to which the abortive grants of the executors related. The metes and bounds description in the decree and in the attempted transfers by the executors are the same. The extent of the property to which the invalid deeds related was a question to be determined in *Huse* v. *Den*. If, as held above, the decree in *Huse* v. *Den* may be construed as carrying title to the line of high tide, it incidentally determines as a necessary incident that the descriptions as used in the deeds extended thereto.

Appellants suggest as a reason for omission from the executors' deed to respondents' predecessors of the strip of beach land between the south line of the Barker survey and the high tide line, that it was common practice to use beach lands for road purposes. The evidence falls far short of establishing a defined roadway. While the beach may have been used at times as a convenient passage across the hilly Rancho throughout its distance, the use was not such as to cause the heirs or other claimants in *Huse* v. *Den* to seek its protection either in that proceeding or in the long period of years which elapsed from affirmance of the decree in 1890 until discovery of oil in 1929. In the circumstances the evidence relied on in the present proceeding in this connection can have little weight in determining the construction of the decree in *Huse* v. *Den*.

Appellants also emphasize that the provision of the decree in *Huse* v. *Den* referring to another parcel which had been the subject of an unauthorized conveyance by the executors expressly includes in addition to property embraced within the metes and bounds description prepared from the Barker survey the following: "Also all that strip of land which lies between the southerly boundary of the above described tract and the line of low tide of the beach of the Pacific Ocean projecting the east and west lines of the tract above described due south to low water mark." The omission of such a provision as to the parcel to which defendants herein have suc-

ceeded indicates to appellants an intent that rights therein should not extend beyond the south line as described.

In another instance, say appellants, where it was intended by the decree to carry title to the ocean, the distance given in the metes and bounds description extends far enough to reach the high tide line. These factors were for the consideration of the trial court. They do not as a matter of law establish appellants' contention that the line of the Barker description was a true boundary and not a meander line. The express reference to an additional strip of land in the Cooper parcel may be explained by the purpose manifested to carry title to the line of *low* tide. A meander line description does not extend it beyond the line of high tide. By what right persons claiming through Nicholas A. Den assert ownership beyond the high tide line does not appear, nor is the court concerned with it in the present proceeding.

Another circumstance strongly relied on by appellants is that the Barker description as used in the invalid deed of the executors and thereafter in the decree in *Huse* v. *Den* concludes with the phrase "containing 941.16 acres of land". According to appellants, this is the exact acreage embraced within the metes and bounds description, but if the parcel is held to include the strip of beach land the acreage is erroneous by 20.83 acres. Appellants cite *Hostetter* v. *Los Angeles T. Ry. Co.*, 108 Cal. 38 [41 Pac. 330], for the proposition that while a statement of acreage in a deed is not controlling, it may be a valuable aid in fixing a doubtful boundary. In the case herein the statement as to acreage is as to the land within the metes and bounds description. As pointed out in *McLeod* v. *Reyes, supra,* in computing the acreage for which the grantee under a government patent shall pay, the area within the meander line only is considered, with the result that the statement of total acreage relates only to such land. It would not be surprising then to find a survey prepared for a private purpose following a similar procedure.

Appellants also note that when the Spaldings acquired the property in 1926, long after the proceedings in *Huse* v. *Den* and after several intervening conveyances, they took cognizance of the fact that the Barker south line as described did not extend to the line of high tide by obtaining in addition to a grant deed following the Barker description, a quitclaim

of all land lying between the southerly boundary as described in the grant deed and the line of ordinary high tide along the seashore. This indicates only that the attorney who represented them acted in an abundance of caution following his observation that the line as described did not extend to high tide.

.Appellants lay special stress on their further contention that the trial court based its judgment on an erroneous assumption, without consideration of the real issue in the case. The brief opinion of the court includes the following: "The court is of the opinion that the boundary line as described in Thompson's survey [the patent survey] along the southern border of the Tecolote Ranch is a meander line and that the true boundary of said tract upon the south is the ocean. Having arrived at this conclusion it is deemed unnecessary to pass upon other questions raised."

The question in this case is not, appellants state, whether the Thompson line was a meander line, but whether the Barker line, used in the instruments through which defendants claim, is such a line, or is a true boundary, as appellants contend. The briefs of the parties contain argument as to the use which may be made of the opinion of a trial court, which is no part of the record on appeal, to invalidate a judgment. It is unnecessary to enter upon a discussion of this question for the reason that it cannot be said from the opinion that the trial court overlooked this major issue in the case. The implication of the courts' opinion, which did not attempt a detailed analysis, is that if the Thompson line was a meander line, concerning which there was no dispute, all subsequent dealings of the parties and the decree in *Huse* v. *Den* indicate that the line of the Barker survey, prepared to provide a description for a segregated portion of the Rancho, was likewise a meander line.

As a further ground supporting the judgment, respondents rely on section 830, Civil Code. It provides: "Except where the grant under which the land is held indicates a different intent, the owner of the upland, when it borders on tidewater, takes to ordinary high-water mark; when it borders upon a navigable lake or stream, where there is no tide, the owner takes to the edge of the lake or stream, at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream."

Appellants contend that said section does not apply where the line of the property on the side of the ocean is described by metes and bounds and such line does not extend to the high tide line. In such event, appellants contend, the land cannot be said "to border on tidewater". In appellants' analysis, the section would have application where land is described by some such phrase as bordering the ocean, or along the line of the ocean. In *McLeod* v. *Reyes, supra,* at page 151 et seq., the District Court of Appeal for the Third Appellate District relied on the section as an additional reason for holding that title extended to the line of high tide notwithstanding the line as described was slightly shoreward of the tide line. It is unnecessary in the present appeal to discuss the section further, in view of our conclusion that without reference thereto the south line of the Barker survey is a meander line which carries title to the line of high tide.

It is also not necessary to discuss respondents' further contention that if they do not have record title to the strip of beach land, they have title by adverse possession, nor the further contention that plaintiffs and appellants herein have not shown that at the present time they have such an interest in the land, in the event defendants have not established title, as to permit them to sue.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 24, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 22, 1940.