Emma Jane HAWKINS, Appellant,
v.
ALASKA FREIGHT LINES, INC., and E. W.
Hundley, a/k/a Eugene L. Hund-
ley, Appellees.
No. 564.

Supreme Court of Alaska.
Feb. 14, 1966.

H. Russell Holland and Ted Stevens, An-
chorage, for appellant.

Clifford J. Groh and John W. Hendrick-
son, Groh & Benkert, Anchorage, for appel-
lees.

Before NESBETT, C. J., and DIMOND
and RABINOWITZ, JJ.

DIMOND, Justice.

Appellant is the owner of two waterfront
lots situated on the east side of Resurrec-
tion Bay, across the bay from the City of
Seward, Alaska. The lots are located along
the coastline between waterfront property
owned by appellee, Hundley, and the Nash
Highway which connects with the Seward
Highway.

Hundley leased his property to appellee, Alaska Freight Lines, which constructed a dock on Hundley's property at his expense, and at its own expense in 1952 built a road along the beach [1] across appellant's lots.

Appellant commenced this action against appellees, alleging that the construction and use of the beach road by appellees constituted a trespass on appellant's property. Appellant's complaint asked for damages on account of the trespass, for rental value for the use of the beach road from the time of entry by appellees, and for an injunction restraining appellees from further trespassing on appellant's property.

The case was tried by the court below without a jury. The court found from conflicting testimony that appellant's son, James Hawkins, was her agent prior to and during the years 1952–1956, with full right to manage appellant's affairs and property located in the Seward Recording District; that appellant, through her son and agent, had given oral permission to appellees to use the beach road in 1952; that appellant knew of the location of the road being constructed by Alaska Freight Lines and acquiesced in such construction; and that appellant had initiated no written complaint or legal action until the commencement of this suit in 1959.

The trial court held that since appellant had failed to object at the time large expenditures for road construction were being made,[2] she was estopped to deny appellees the use of the beach road. Judgment was entered for appellees, and appellant brought this appeal.

Although appellant raises 14 specifications of error in her brief, we need consider only two questions: (1) whether the evidence supports the finding that appellant gave oral permission to appellees to use the beach road and acquiesced in such use and in the expenditures of money by Alaska Freight Lines to construct the road, and (2) whether it was proved that the beach road constructed by appellees crossed over any portion of appellant's property.

As to the first question, we hold that the finding as to oral permission and acquiescence was clearly erroneous. Appellant testified that her son, James, had authority to run her store in Seward, but had no authority to manage, sell, or give away any of the property involved in this case. She stated that her son had told her that he had given permission to appellee, Hundley, to improve what was referred to as the "existing cat road", and that she had no objection to that. According to the evidence, the existing cat road was not the same as the beach road, but was a rough, partly passable road located about 200 to 300 feet above the location of the beach road. Appellant did not admit, nor was there any other evidence tending to prove that she had given permission to appellees to construct and use the beach road, that she had authorized her son, James, to give such permission, or that she even knew of the construction of the beach road until after it was completed. Appellees may not rely upon the theory of creation of an easement by oral grant and estoppel,[3] when there is no evidence to support a finding that an oral grant was made.

The second question that we must consider involves the trial court's findings of fact Nos. 15 and 16, which read as follows:

15. Although the road was caused to be surveyed by the plaintiff during the course of the trial, neither party has met the burden of proof for showing what portion, if any, of the road constructed by the defendants passes across the plaintiff's property, nor have they met the burden of proof as to showing where the high and low water mark along the beach exists.

1. This road will hereafter be referred to as the "beach road".

2. The evidence showed that Alaska Freight Lines expended $40,000 in the construction of the beach road.

3. See Freightways Term Co. v. Industrial and Commercial Constr., Inc., 381 P.2d 977, 984–985 (Alaska 1963).

16. In the absence of such evidence, the Court is unable to determine whether a portion, if any, of the road constructed is on the plaintiff's property.[4]

Plaintiff's (Appellant's) exhibit 13 is a drawing of a field survey made in 1964 of appellant's property and of the location of the beach road in relation to such property. The seaward boundary of the property is designated by the high water meander line, established by surveyors from the field notes of a United States government survey of the property made in 1911. The actual mean high water line is not shown. In findings of fact Nos. 15 and 16 the trial court sustained appellees' contention that since only a meander line and not the line of mean high water was established, and since the line of mean high water is the boundary line of waterfront property, it is impossible to tell where the beach road is situated in relation to the seaward boundary of appellant's property.

■■■ In the surveying of property, the meander line such as is involved here is a straight line between fixed points, or a series of connecting straight lines, run along the shore of a body of water for the purpose of marking the general contour of the shore at high water. Since it is not always possible or feasible to follow all of the minute windings of a high water line, only the general course of the body of water is followed and the meander line runs substantially along the line of high water. The meander line is generally not the boundary line of the property along the shore—the boundary being marked by the actual line of mean high water.[5]

Here it is true, as appellees contend, that the seaward boundary of appellant's property was not surveyed. The reason for this is that it was impracticable to establish the mean high water line because it had been covered by fill when appellees constructed the beach road. In order to attempt to ascertain the mean high water mark it would have been necessary to drill through the road into the beach below and take core samples, and then obtain a geologist's opinion as to the true location of the mean high water line before the road was constructed.

■■■ Since appellees, by their own actions, made it impracticable for appellant to establish the seaward boundary of her property, it would be unfair to place the burden on appellant to establish that boundary in order to prove that the beach road crossed her property. In such a situation we hold that it will be presumed that the meander line, which approximates the line of mean high water, constitutes the mean high water mark and established appellant's seaward boundary, and that the burden was upon appellees to rebut that presumption. Since appellees did not meet this burden, and since the survey of appellant's property shows that the beach road is situated mostly above or landward of the meander line, a trespass on appellant's property has been established.

The judgment is reversed and the case remanded to the court below for determination of the relief prayed for in appellant's complaint.

4. Finding of fact No. 8 appears to conflict in part with findings 15 and 16. Finding No. 8 reads as follows:
   The defendants constructed a road along the beach *which crossed over a portion of plaintiff's property,* and which road terminated at the lands owned by defendant Hundley. (Emphasis added.)

5. Niles v. Clear Point Club, 175 U.S. 300, 308, 20 S.Ct. 124, 44 L.Ed. 171, 174 (1899); Horne v. Smith, 159 U.S. 40, 42–43, 15 S.Ct. 988, 40 L.Ed. 68, 69 (1895); Shively v. Bowlby, 152 U.S. 1, 39, 14 S.Ct. 548, 38 L.Ed. 331, 345 (1894); St. Paul & Pac. R.R. v. Schurmeier, 74 U.S. (7 Wall.) 272, 286–287, 19 L.Ed. 74, 78 (1869); Nordale v. Waxberg, 84 F.Supp. 1004, 1006, 12 Alaska 399, 403–404 (D.Alaska 1949); Den v. Spalding, 39 Cal.App.2d 623, 104 P.2d 81, 83 (1940); Trustees of Internal Improvement Fund v. Toffel, 145 So.2d 737, 741 (Fla.Dist.Ct.App. (1962); Clark, Surveying & Boundaries, §§ 199–201 (2d ed. 1939).